**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAFETY SOLUTIONS, INC., an Illinois Corporation, and ANGELIA HOPSON, an individual,         Plaintiffs,         v.         CITY OF CHICAGO, MARK LINSE, individually and/or in his official capacity as Deputy Chief Paramedic of the Chicago Fire Department, EDWARD HIGGINS, individually and/or in his official capacity as Equipment Specialist of the Chicago Fire Department, MOORE MEDICAL, LLC, a Delaware Corporation, EDWARDS MEDICAL SUPPLY, INC., and EDWARD C. JAROSZ, JR., individually and/or in his official capacity as President of Edwards Medical Supply, Inc.,         Defendants. | Case No. 11 C 1305 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court are (i) Defendants City of Chicago, Mark Linse, and Edward Higgins's motion to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and (ii) Defendants Moore Medical, LLC, Edwards Medical Supply, Inc., and Edward C. Jarosz, Jr.'s motions to dismiss Counts II and IV of Plaintiffs' Complaint under Rule 12(b)(6). For the reasons discussed below, the Court grants in part with prejudice, grants in part without prejudice, and denies in part Defendants' motions.

# INTRODUCTION

On January 21, 2011, Plaintiffs Safety Solutions, Inc. ("Safety Solutions") and Angelia Hopson filed a complaint against Defendants City of Chicago ("City"), Mark Linse, Edward Higgins, Moore Medical, LLC ("Moore"), Edwards Medical Supply, Inc. ("Edwards"), and Edward C. Jarosz, Jr. (collectively, "Defendants") in the Circuit Court of Cook County. (R. 1-1, Compl.) Plaintiffs, a minority-owned business and its owner, generally allege that after the City contracted with them as part of a legislative initiative to support minority-owned and women-owned businesses, (i) the City failed to fulfill its contractual obligations to Plaintiffs, and (ii) Defendants conspired to interfere with Plaintiffs' business dealings with the City. Plaintiffs claim that racial discrimination motivated Defendants' misconduct. As a result of Defendants' intentional misconduct, Plaintiffs allege, Safety Solutions was forced to cease its operations and declare insolvency, causing Plaintiffs monetary damages. In their Complaint, Plaintiffs bring a breach of contract claim against the City (Count I), a tortious interference claim against Moore, Jarosz and Linse (Count II), a common law fraud claim against the City (Count III), a civil conspiracy claim against the City, Moore and Jarosz (Count IV), several violations of 42 U.S.C. §§ 1981 and 1983 against the City, Linse and Higgins (Counts V-VIII), and a claim under 42 U.S.C. § 1985 against the City, Moore and Jarosz (Count IX).

Plaintiffs served the City with the summons and a copy of the Complaint on January 28, 2011. On February 24, 2011, with their co-defendants' consent,[1] the City timely removed the

---

[1] Defendants Moore, Edwards, and Jarosz consented in writing to the City's notice of removal. (R. 1, Not. of Removal, at 3.) Defendants Linse and Higgins – City employees sued in their individual and official capacities – had not yet been served when the City filed its notice of removal. (R. 1, ¶ 5.) Once served, Linse and Higgins did not object to the removal.

case to this Court under 28 U.S.C. § 1441(b), which provides that "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable." The City filed the contracts at issue in this dispute as exhibits to its notice of removal. (R. 1-2 through R. 1-7.) On April 6, 2011, Defendants City, Linse and Higgins[2] filed a motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (R. 19, City Mot.) That same day, Defendants Edwards and Moore filed a motion to dismiss Counts II and IV (the counts pertaining to them) pursuant to Rule 12(b)(6). (R. 21, Edwards & Moore Mot.) Defendant Jarosz moved to dismiss Counts II and IV on April 7, 2011, and joined Edwards and Moore's memorandum in support of their motion to dismiss. (R. 26, Jarosz Mot.)

## LEGAL STANDARDS

### I.  Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008) (citation and quotation marks omitted). As such, "[e]nsuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit." *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005). As the Seventh Circuit explains, "[s]ubject matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself." *Craig v. Ontario Corp.*, 543

---

[2]  At all times relevant to Plaintiffs' Complaint, Defendants Mark Linse and Edwards Higgins were employed by the City of Chicago Fire Department. Defendant Linse was the Deputy Chief Paramedic, *id.* ¶ 5, and Defendant Higgins was the Equipment Specialist, *id.* ¶ 6. Plaintiffs sue Linse and Higgins individually and in their official capacities.

F.3d 872, 875 (7th Cir. 2008). Furthermore, the proponent of federal jurisdiction bears the burden of establishing subject matter jurisdiction. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) ("[The] party that chooses federal court [must] set out the basis of federal jurisdiction and prove any contested factual allegation."); *see also Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

## II.     Rule 12(b)(6)

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities[.]" *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting

*Twombly,* 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). In ruling on a Rule 12(b)(6) motion, courts may consider exhibits attached to the pleadings if the complaint refers to the document at issue or if the document is central to the plaintiff's claims. *See McCready v. eBay, Inc.,* 453 F.3d 768, 891 (7th Cir. 2006); Fed. R. Civ. P. 10(c).

## BACKGROUND

From approximately 1990 to 2008, the City awarded commodities contracts for and purchased millions of dollars of Emergency, Health, Mass Casualty and Disaster Related Medical Equipment and Supplies annually. (R. 1-1, Compl. ¶ 13.) During that time, the City awarded the majority, if not all, of its contracts for such medical supplies and equipment to Defendant Edwards Medical Supply, Inc., an Illinois corporation. (*Id.* ¶¶ 9, 14.)[3] In or about 2008, the City implemented a "Target Market Program" with the stated goal of awarding certain percentages of the annual dollar value of all non-construction contracts to certified Minority Business Enterprises ("MBEs") and Women Business Enterprises ("WBEs"). (*Id.* ¶¶ 15, 16.) Under the Target Market Program, the City split its commodities contract for medical supplies

---

[3] In the Complaint, Plaintiffs refer to Defendants Edwards Medical Supply, Inc. and Moore Medical, LLC collectively as "Moore" because Moore Medical, LLC acquired Edwards in or about February 2009. (*Id.* ¶ 11.) The Court will thus refer to the City's contract with Edwards/Moore as the "Moore contract" even though, at its signing, Edwards was the party to the contract. Hereinafter, the Court will also refer to Edwards and Moore interchangeably as "Moore."

5

and equipment into two separate contracts, one of which was limited to MBEs/WBEs. (*Id.* ¶ 17.) Edwards was neither an MBE nor a WBE. (*Id.* ¶ 9.)

Plaintiff Safety Solutions was an MBE and a WBE, certified with the City of Chicago. (*Id.* ¶ 3.) Plaintiff Angelia Hopson was its CEO and sole shareholder. (*Id.* ¶ 2.) In 2008, the City awarded Safety Solutions a three-year Target Market Program commodities contract for medical supplies and equipment. (*Id.* ¶ 18.) The contract supported various City departments, including the Chicago Department of Public Health, Chicago Fire Department, Chicago Police Department, and Chicago Office of Emergency Management and Communication. (*Id.* ¶ 20.) The contract listed over 350 specific items – including, for example, different types of medical gloves, bandages, and masks, often specifying particular brands – and set out the price for each item, as well as the estimated usage (i.e., how much of each item the City planned to order). (*Id.* ¶¶ 21, 23.) In accordance with the contract, once the City placed an order, Safety Solutions was obligated to obtain the ordered items, assemble the items pursuant to the City's orders, and deliver the items to the City department that placed the order. (*Id.* ¶ 22.) The estimated value of the contract, calculated by multiplying the City's expected usage by the items' designated prices, was just under $21 million over the three years, or approximately $7 million per year. (*Id.* ¶ 24.)

The City awarded the other (i.e. non-Target Market Program) commodities contract for medical supplies and equipment to Moore, its long-time supplier. (*Id.* ¶ 25.) Unlike the Safety Solutions contract, the Moore contract did not list specific items with set prices. (*Id.* ¶ 26.) Instead, it primarily listed catalogs from which the City could order medical supplies, and

specified the discount the City would receive.  (*Id.*)[4]  The Moore contract covered the same three-year term as the Safety Solutions contract, but had a total estimated value of approximately $7.5 million, or approximately $2.5 million per year.  (*Id.* ¶ 27.)

Based on the City's projected purchasing demands and the estimated value of the contract, Safety Solutions invested in warehousing facilities, delivery vehicles and additional personnel.  (*Id.* ¶ 29.)  During the first two years of the contract, however, the City only placed approximately $400,000 of orders with Safety Solutions.  (*Id.* ¶ 30.)  The City's total orders under its contract with Safety Solutions between 2008-2010 thus fell approximately $13.6 million short of the estimate set forth in the contract.  (*Id.* ¶ 31.)  Safety Solutions became insolvent and ceased its operations as a result of the extreme discrepancy between its expected and its actual demands from the City.  (*Id.* ¶ 32.)

Plaintiffs subsequently discovered that one or more of the City departments, including the Chicago Department of Public Health, had placed orders with Moore for items that were listed on the City's contract with Safety Solutions.  (*Id.* ¶ 33.)  Plaintiffs allege that Safety Solutions's contract with the City requires the City – including its departments – to order all items listed on the contract from Safety Solutions, *id.* ¶ 34, and to order items from Moore only if they are not listed in the Safety Solutions contract, *id.* ¶ 35.  Plaintiffs further allege that since 2008, the City has placed orders totaling millions of dollars with Moore for items that were listed in the City's contract with Safety Solutions.  (*Id.* ¶ 36.)  Plaintiffs claim the City should have ordered those items from Safety Solutions.  (*Id.* ¶ 37.)

---

[4]  In fact, the Moore contract also listed 19 specific items that the City could purchase. (R. 1-5 through R. 1-7.)

Plaintiffs specifically identify the Chicago Fire Department as violating the terms of the City's contract with Safety Solutions by inappropriately placing orders with Moore that it should have placed with Safety Solutions. (*Id.* ¶¶ 38-39.) Plaintiffs claim that beginning in or about June 2008, the Chicago Fire Department – at the direction of, and through the actions of, Defendants Linse and Higgins – would "expend inordinate amounts of time and effort to inspect the [] equipment and supplies" Safety Solutions had delivered, and would "write up complaints for perceived issues . . . no matter how immaterial." (*Id.* ¶ 40.) Plaintiffs allege that the Chicago Fire Department did not inspect deliveries from Moore in the same way during that time period. (*Id.* ¶ 41.) Plaintiffs also allege that beginning in or about June 2008, Chicago Fire Department personnel – under the authority and control of Linse – including Higgins, "would with Linse's knowledge, approval and acquiescence, frequently make racist comments concerning Safety Solutions and the fact that it was a MBE." (*Id.* ¶ 42.)

Finally, Plaintiffs allege that Defendants Linse, Moore and Jarosz[5] discouraged one or more manufacturers of some of the equipment and supplies listed in Safety Solutions's contract from selling their products to Safety Solutions. (*Id.* ¶¶ 43, 44.) Plaintiffs allege that this interference caused Safety Solutions to experience "extreme difficulty fulfilling certain orders because it was unable to obtain certain ordered products from the manufacturers." (*Id.* ¶ 45.)

**ANALYSIS**

Standing is a threshold requirement imposed by Article III of the Constitution which limits federal subject matter jurisdiction to claims that present an actual case or controversy in

---

[5] At all times relevant to Plaintiffs' Complaint, Defendant Edward C. Jarosz Jr. was the President of Defendant Edwards Medical Supply, Inc. (*Id.* ¶ 10.)

whose outcome a plaintiff has a "personal stake."  *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000).  The Court thus begins its analysis with Defendants' motion to dismiss Plaintiff Angelia Hopson under Rule 12(b)(1).

## I.    Angelia Hopson Lacks Standing to Bring Suit

In their motion, Defendants City, Linse and Higgins (hereinafter "the City Defendants") contend that Plaintiff Hopson lacks standing to bring the federal claims under 42 U.S.C. §§ 1981, 1983 and 1985 because the contract at issue is between the City and Safety Solutions, and because the violations alleged in Counts IV through IX pertain only to Safety Solutions and claim damages only to Safety Solutions.  Based on Plaintiffs' response, the City Defendants note in their reply brief that, in fact, Hopson lacks standing to bring any of the stated claims – not just the civil rights claims.  Although district courts may not generally consider arguments raised for the first time in a reply brief, *see Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011), "[s]ubject matter jurisdiction is so central to the district court's power to issue any orders whatsoever that it may be inquired into at any time, with or without a motion, by any party or by the court itself."  *Craig*, 543 F.3d at 875.  For the following reasons, the Court finds that Hopson lacks standing to bring the claims stated in Plaintiffs' Complaint.

"[I]t is fundamental corporation and agency law–indeed, it can be said to be the whole purpose of corporation and agency law–that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006).  This tenet applies equally to civil rights claims.  As the Supreme Court in *Domino's Pizza* explained, "Section 1981 offers relief when racial discrimination blocks the creation of a

contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.*, 546 U.S. at 476. "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Id.* The same holds true under Seventh Circuit case law. *See Amber Pyramid, Inc. v. Buffington Harbor Riverboats, L.L.C.*, 129 Fed.Appx. 292, 294 (7th Cir. 2005) (holding that shareholders bringing a § 1981 suit for an underlying breach of contract case "have no stake in the discrimination claim against [the defendant] because shareholders lack standing to sue third parties for indirect damages resulting from injuries to corporations") (collecting cases); *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989) ("a plaintiff-shareholder cannot maintain a civil rights action for damages suffered by the corporation"); *see also id.* at 459 (reaffirming the principal that "the investors in the firm suffer when the firm incurs a loss, yet only the firm may vindicate the rights at issue").

Plaintiffs do not allege that Hopson was a party to Safety Solutions's contract with the City.[6] Nor do Plaintiffs allege that Hopson suffered a distinct injury. Plaintiffs describe identical injuries under each of their claims which can only be ascribed to Safety Solutions, namely:

a.   hundreds of thousands to millions of dollars in lost profits;

b.   capital expenditures in warehousing facilities, delivery vehicles and additional personnel; and

---

[6] In fact, Plaintiffs specifically allege that the City contracted with Safety Solutions. (Compl. ¶ 18.)

c.          insolvency and ceased business operations.

(Compl. ¶¶ 50 (Count I), 59 (Count II), 66 (Count III), 74 (Count IV), 79 (Count V), 87 (Count VI), 97 (Count VII), 103 (Count VIII), & 108 (Count IX).)  Plaintiffs nevertheless ask the Court to reject the City Defendants' argument because, they contend, Hopson possesses standing to sue as an intended third-party beneficiary to the contract.  (R. 35, Pls.' Resp. to City Defs.' Mot. to Dismiss, at 13-14.)  Plaintiffs' argument fails.

"In Illinois, if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City Of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, – F.3d – , 2011 WL 3529155, at *3 (7th Cir. Aug. 12, 2011) (citing *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 178 N.E. 498, 501 (Ill. 1931)).  "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract[.]" *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005) (quoting *Estate of Willis v. Kiferbaum Constr. Corp.*, 294 Ill.Dec. 224, 830 N.E.2d 636 (Ill. 2005)).  *See also Golden v. Barenborg*, 53 F.3d 866, 870 (7th Cir. 1995) ("a person is considered a third party beneficiary only when the benefit to him is intended").  "For an intended third-party beneficiary to enforce contract terms," however, "the liability of a promisor to the beneficiary 'must affirmatively appear from the language of the instrument' . . . and the contract must be made for the *direct* benefit of the third party[.]" *Cont'l Cas. Co.*, 417 F.3d at 734 (emphasis in original) (internal quotations and citations omitted).  Otherwise stated, "[t]he intent to benefit the third party must affirmatively appear from the language of the contract." *Aurora Blacktop Inc.*, 2011 WL 3529155, at *3.  "If the intent to benefit others is not explicitly provided for in the contract, 'its

11

implication at least must be so strong as to be practically an express declaration.'" *Id.* (internal quotation and citations omitted). Having reviewed the Complaint and Safety Solutions's contract with the City, which the Court may properly consider in its analysis of Defendants' motions to dismiss, *see* Fed. R. Civ. P. 10(c), Plaintiffs cannot satisfy either of those requirements.

Plaintiffs rely heavily on the Seventh Circuit's ruling in *Continental Casualty* to support their standing argument. Their attempt to analogize the facts of this case to the very distinct factual circumstances set forth in *Continental Casualty* in order to fashion a standing argument for Hopson does not, however, persuade the Court. In *Continental Casualty*, a plaintiff reinsurance company sued a defendant reinsurer regarding the latter's "participation agreement" in a reinsurance pool to which the plaintiff also belonged. The "participation agreement" governed the contractual terms of the defendant's participation in the litigants' mutual reinsurance pool. Despite the fact that the plaintiff was not a party to the defendant's contract, the *Continental Casualty* court noted that contract was "central to [defendant's] relationship to all other entities involved in this reinsurance arrangement," including the plaintiff. 417 F.3d at 734. As such, the court found that, in accordance with Illinois law regarding intended third-party beneficiaries, although the "beneficiary [was not] identified by name in the contract, [] it [was] identified . . . by describing the class to which it belongs." *Id.* The facts of that case bear no resemblance to the present matter.

Finally, as a general matter, "none of [Plaintiffs'] claims applies any facts to its cause of action to suggest how [Defendants] could conceivably, let alone plausibly, be liable" to Hopson under this intended third-party beneficiary theory. *Crawford v. Countrywide Home Loans, Inc.*,

– F.3d – , 2011 WL 2906157, at *8 (7th Cir. July 21, 2011) (citing *Iqbal*, 129 S.Ct. at 1949).

Plaintiffs mention Hopson only once in their Complaint, *see* Compl. ¶ 2 ("Angelia Hopson ('Hopson'), a minority, is the CEO and sole shareholder of Safety Solutions."), and the factual allegations do not support any claims or damages that could be plausibly construed as relating to Hopson. For all these reasons, the Court grants the City Defendants' motion to dismiss Hopson for lack of standing.[7]

## II.    Defendants' Motions to Dismiss the Complaint Under Rule 12(b)(6)

### A.    The Court grants the City's motion to dismiss Plaintiffs' breach of contract claim (Count I)

In Count I of their Complaint, Plaintiffs bring a breach of contract claim against the City. The parties agree that Illinois law governs these claims. To established a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber*, 340 Ill.Dec. 669, 928 N.E.2d 1266 (Ill. 2010). Plaintiffs allege that (1) they had a valid and enforceable contract with the City (Compl. ¶ 47), (2) they performed their obligations under the contract (*id*. ¶ 48), and (3) the City breached the contract by (a) failing to place the number of orders it stated in their contract, and (b) placing orders with Moore that it was obligated to place with Safety Solutions (*id*. ¶ 49), (4) causing Plaintiffs damages including

---

[7] Plaintiffs' argument that an intended third-party beneficiary of a contract may have rights under § 1981, *see Domino's Pizza Inc.*, 546 U.S. at 476 n.3 (acknowledging the possibility of, but not ruling on, the existence of an claim under § 1981 for an intended third-party beneficiary), is thus moot.

"hundreds of thousands to millions of dollars in lost profits," capital expenditure outlays, and, ultimately, insolvency (*id.* ¶ 50).

The City contends that the terms of its contract with Safety Solutions contradict Plaintiffs' allegation that the City breached the contract. (R. 30, City Defs.' Mot. to Dismiss, at 5.) Specifically, the City maintains that the contract does not obligate the City to purchase a specific or minimum amount of supplies from Safety Solutions, or to purchase the supplies listed in the contract exclusively from Safety Solutions. The City cites to various provisions in the contract to support these assertions, including a clause that states that the estimates in the contract "are for bid canvassing purposes only" (R. 1-2 at 28, § 3.4), a clause wherein the City reserved "the right to increase or decrease quantities ordered under th[e] contract"( *id.*), and a provision that the City "will be obligated to order and pay for only such quantities as are from time to time ordered, delivered and accepted on purchase order releases" (*id.*). In response, Plaintiffs argue that the City mischaracterizes the terms and tenor of the contract. (R. 35, Pls.' Resp. to City Defs.' Mot., at 6-8.)

When considering a motion under Rule 12(b)(6), district courts must question whether the pleadings "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Plaintiffs' Complaint, taken alone, satisfies that pleading standard. As the City correctly points out, however, a plain reading of its contract with Safety Solutions – which the Court may consider as part of the pleadings because Plaintiffs attached it as an exhibit to their Complaint – contradicts Plaintiffs' claim. "[A] plaintiff 'may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.'" *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) (quoting *Centers v. Centennial*

*Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)). Here, Plaintiffs have done just that. In ruling

on a Rule 12(b)(6) motion, "[w]here an exhibit and the complaint conflict, the exhibit typically

controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). "A court is

not bound by the party's characterization of an exhibit and may independently examine and form

its own opinions about the document." *Id.* Having done so here, the Court agrees with the

City's interpretation of the terms of Safety Solutions's contract. Plaintiffs have not pointed to,

and the Court cannot find, a provision in the contract that grants exclusivity to Safety Solutions.

Also absent from the contract is Plaintiffs' claim that the City must order a specified or

minimum amount from Safety Solutions. The section entitled "Quantities," *see* R.1-2 at 28 (§

3.4), explicitly states the opposite.[8] It is well-settled law that courts must "construe contracts by

giving their unambiguous terms clear and ordinary meaning." *Reger*, 592 F.3d at 762 (citation

omitted). Safety Solutions's contract with the City does not obligate the City to make any

specific or minimum purchases such that the City, in purchasing $400,000 of supplies, breached

the contract. Without the ability to establish the City's breach, Safety Solutions cannot sustain a

breach of contract claim. The Court thus grants the City's motion to dismiss Count I of the

Complaint.

---

[8] Under established law, and contrary to Plaintiffs' argument, this means the Safety Solutions contract is not a "requirements contract." *See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 817 (7th Cir. 1999) (holding that under Illinois law "a requirements contract exists only when the contract (1) obligates the buyer to buy goods, (2) obligates the buyer to buy goods exclusively from the seller, and (3) obligates the buyer to buy all of its requirements for goods of a particular kind from the seller.") (citation omitted). Plaintiffs' request that the Court rely on *Empire Gas Corporation v. American Bakeries Co.*, 840 F.2d 1333 (7th Cir. 1988), is thus inapposite.

**B.       The Complaint alleges a tortious interference claim under Count II**

In order to plead tortious interference with a business expectancy under Illinois law, a plaintiff must allege: "(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009) (quoting *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 878 (Ill. 1991)). *See also Kempner Mobile Elecs., Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 716 (7th Cir. 2005) (reciting the same as "[t]he elements of a claim of tortious interference with prospective business or economic advantage") (citation omitted).  The factual allegations support this claim.  Although Defendants Moore, Jarosz and Linse contend that Plaintiffs have not sufficiently pleaded a legal theory in Count II, under Seventh Circuit law "[a] complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).  The Complaint puts Defendants on sufficient notice of Safety Solutions's claim.

**C.       The Complaint alleges a common law fraud claim against the City (Count III)**

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 826 (N.D. Ill. 2010) (quoting *Reger*, 592 F.3d at 766).  A "statement which is

merely an expression of opinion or which relates to future or contingent events, expectations or probabilities ... ordinarily does not constitute an actionable misrepresentation." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (citations omitted). Where a false promise of future conduct "is the scheme or device to accomplish the fraud," however, such a promise can be actionable as fraud. *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (citations omitted). Because promissory fraud is a disfavored cause of action in Illinois, the claim can only survive the pleading stage if the plaintiff "point [s] to specific, objective manifestations of fraudulent intent. . . . If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed." *Id.* at 1012. *See also Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 33 F.Supp. 1381, 1392 (N.D. Ill. 1996) (cause of action exists where plaintiff alleges that defendant made representations that it did not intend to follow through on with the express intent to induce plaintiff's reliance). Plaintiffs have done so here.

The Complaint alleges that "[t]he City falsely stated to Plaintiffs throughout the bid process and in the contract with Safety Solutions that it expected to order $21 million dollars of medical equipment and supplies from Safety Solutions." (Compl. ¶ 61.) It further alleges that the City "knew this statement to be untrue," and that the City "never intended to order anywhere near the $21 million dollars of medical equipment and supplies from Safety Solutions." (*Id.* ¶¶ 62, 63.) The Complaint alleges that the City made this materially false statement in order to "induce Plaintiffs to bid on the contract, to enter into the contract with the City, and to make capital expenditures" and other outlays. (*Id.* ¶ 64.)

Although the City points to the terms of the contract, discussed *supra*, which do not commit the City to fulfill the expectations it sets forth therein, that fact does not save the day. The City set expectations of a $21 million contract with Safety Solutions. For purposes of this fraud claim and based on the allegations in the Complaint, the fact that the City did not commit to that number is of no consequence – Plaintiffs allege that the City deliberately set expectations in that range. Plaintiffs allege that Safety Solutions relied on that number when bidding on, and deciding to enter into, the contract. The City ultimately placed orders valued at less than 3% of that expected valuation – or, put another way, 97% less than they had projected at the outset – causing Safety Solutions considerable financial harm, including insolvency. Plaintiffs claim, albeit elsewhere in the Complaint, that the City drafted the contract that way "so that it would give the appearance of following through with and meeting the goals of its 'Target Market Program.'" (*Id.* ¶ 71.) Construing the Complaint in favor of Plaintiffs, as the Court must in this Rule 12(b)(6) motion, Safety Solutions states a cognizable common law fraud claim against the City. The City's motion to dismiss Count III fails.

### D. The Complaint alleges a civil conspiracy claim against the City, Moore and Jarosz (Count IV)

Under Illinois law, "[c]ivil conspiracy consists of an agreement to accomplish an unlawful purpose and 'an overt act in furtherance of the conspiracy' that is 'tortious or unlawful in character.'" *In re Repository Tech., Inc.*, 601 F.3d 710, 726 (7th Cir. 2010) (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888, 894 (Ill. 1994)). "[C]ivil conspiracy is not an independent tort but must be premised on the commission of an underlying independent wrong." *De Bouse v. Bayer AG*, 385 Ill.App.3d 812, 829, 324 Ill.Dec. 806, 896 N.E.2d 882 (Ill. App Ct. 2008), *overruled on other grounds*, 235 Ill.2d 544, 922 N.E.2d 309 (Ill.

18

2009).  The "function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted or encouraged the active wrongdoer." *Redelmann v. Claire Sprayway, Inc.*, 375 Ill.App.3d 912, 923, 314 Ill.Dec. 320, 874 N.E.2d 230 (Ill. App. Ct. 2007).  In order to set forth a conspiracy claim, a plaintiff must allege that "each of the defendants 'knowingly and voluntarily participated in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.'"  *Mosley v. City of Chicago*, 614 F.3d 391, 400 (7th Cir. 2010) (quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 241 Ill.Dec. 787, 720 N.E.2d 242, 258 (Ill. 1999)).

In Count IV, Plaintiffs allege that the City "drafted the [Safety Solutions and Moore] contracts so that it would appear that the contract designated for MBEs/WBEs, the one awarded to Safety Solutions, was worth almost three times the value of the one awarded to Moore, a non-MBE/WBE."  (Compl. ¶ 70.)  Plaintiffs further allege that the City, Moore and Jarosz "had an agreement and understanding that the City would, contrary to the terms of the two contracts, still place the vast majority of its orders for medical equipment and supplies with the non-MBE/WBE Moore instead of Safety Solutions, the certified MBE/WBE."  (*Id.* ¶ 72.)  As the Court has already held, *see supra* at Subsection D, Plaintiffs state a viable fraud claim against the City. Reviewing the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs plead sufficient allegations regarding Moore and Jarosz's conspiratorial conduct in furtherance of that fraud to support a civil conspiracy claim.

**E.      The Section 1981 Claim Against Defendants Higgins and Linse[9] (Count V)**

To state a § 1981 claim, a plaintiff must establish that (1) it is a member of a racial or ethnic minority; (2) defendants intended to discriminate against it on the basis of race or ethnicity; and (3) "the discrimination deprived [plaintiff] of one or more rights enumerated in § 1981, such as the making and enforcing of a contract."  *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005) (quoting *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).  For purposes of § 1981, the term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  An essential element of a § 1981 claim is that the defendant's action be motivated by racially discriminatory animus.  *Freeman v. Chicago Park Dist.*, 189 F.3d 613, 618 (7th Cir. 1999).  *See also Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008) (tortious interference with contract rights violates 42 U.S.C. § 1981 "when the motivation for the interference is racial") (collecting cases).  Liability under 42 U.S.C. § 1981 attaches only to those who personally participate in the alleged discrimination.  *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981).

Because Plaintiffs satisfactorily plead a tortious interference claim against Defendant Linse, *see supra*, two questions remain: (1) do Plaintiffs sufficiently allege Defendant Higgins's involvement, and (2) do Plaintiffs allege a race-based motivation for that tortious interference.

---

[9]  Under Seventh Circuit law, claims brought against defendants in their official capacities are treated as claims against the municipality.  *See Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010).  Therefore, the Court grants the City Defendants' motion to dismiss Safety Solutions's claims against Higgins and Linse in their official capacities.

The City Defendants claim that the Complaint does not satisfactorily allege Defendant Higgins's personal involvement in the constitutional violations under § 1981. Even reading the Complaint under the lenient standards afforded at the Rule 12(b)(6) stage, the City Defendants are correct. In their Complaint, Plaintiffs allege that Defendant Higgins made racist comments concerning Safety Solutions, and that the Chicago Fire Department – "at the direction of and through the actions of Linse and Higgins" – spent "inordinate amounts of time and effort" to inspect Safety Solutions's deliveries. (Compl. ¶¶ 40, 42.) Plaintiffs allege that the Chicago Fire Department did not accord similar treatment to non-MBE/WBE Moore. (Compl. ¶ 43.) Plaintiffs do not allege that Higgins interfered with Safety Solutions's contracts – the Complaint only names Linse, Moore and Jarosz's personal involvement in that alleged misconduct. Thus, the Court grants Defendants' motion to dismiss Count V as to Higgins without prejudice. Because Plaintiffs have satisfactorily alleged Linse's personal involvement in the tortious conduct, and alleged a race-based motivation for Linse's interference, Count V states a claim against Defendant Linse.

**F.**      **The Section 1983 claim against Defendants Linse and Higgins (Count VII)**

The City Defendants present a cogent argument for the Court's dismissal of Safety Solutions's due process claim under § 1983 (Count VII). In its response, however, Safety Solutions disputes the City Defendants' characterization of its claim, and asserts that its § 1983 claim describes a Fourteenth Amendment equal protection violation. The Seventh Circuit has "stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery." *Alioto v. Town of Lisbon*, -- F.3d -- , 2011 WL 2642369, at *4 (7th Cir. July 7, 2011) (citing *Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 283 n. 2 (7th

Cir. 2011); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 561-62 (7th Cir. 2011). Nevertheless, plaintiffs are required to put defendants on notice of their claims, and Counts VII in no way suggests that Safety Solutions is pleading an equal protection claim. The Court grants the City Defendants' motion to dismiss Count VII without prejudice and grants Safety Solutions leave to file an amended complaint with a claim that properly conforms to Seventh Circuit law on equal protection.

> **G.** **The Section 1981 and 1983 claims against the City (Counts VI & VIII)**

The City Defendants argue that the Complaint fails to allege federal civil rights claims under 42 U.S.C. §§ 1981 and 1983. As the City Defendants correctly note, §§ 1981 and 1983 claims against a municipality cannot rely on a theory of *respondeat superior*. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-37, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (applying the principles for municipal liability in § 1983 litigation established by *Monell* to suits under § 1981). Instead, a plaintiff must allege that (i) the City maintains an express policy that, when enforced, causes a constitutional deprivation; (ii) the discrimination / constitutional violation was part of a widespread practice or policy which, although not explicitly authorized, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (iii) someone with final policymaking authority for the City made discriminatory decisions. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). "In applying the different theories of liability recognized under *Monell*," plaintiffs must "show that their injuries were caused by the policies or practices complained of." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010). *See also Moore v. City of Chicago*, 126 Fed.Appx. 745, 747 (7th Cir. 2005) ("To

properly allege a claim under 42 U.S.C. § 1981, a plaintiff must show that the rights violation was caused by a 'custom or policy within the meaning of *Monell*'") (internal quotation and citation omitted); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (holding that "as in his Section 1983 claim, [the plaintiff] must 'show that the violation of his "right to make contracts" protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.'") (quoting *Jett*, 491 U.S. at 735-56).

Counts VI and VIII do not present a model of clarity. Since "Section 1981 protects the right to make contracts," if Plaintiffs intend to allege that the City engaged in racial discrimination when choosing to purchase its commodities contracts with non-MBE/WBE Moore instead of MBE/WBE Safety Solutions, then Safety Solutions may have a claim. *Rapid Test Prods. v Durham Sch. Servs., Inc.*, 460 F.3d 859, 860 (7th Cir. 2006); *see also Muhammad*,547 F.3d at 878 ("That is to say that tortious interference with contract rights violates section 1981 when the motivation for the interference is racial.").[10]

_____

[10] The City Defendants' reliance on *Muhammad* undermines, rather than supports, their argument. In *Muhammad*, the litigants were parties to a joint venture agreement that bid on a contract agreement to install air conditioners in buildings owned by the Chicago Housing Authority. Plaintiff was a minority business enterprise, defendant was not. The joint venture succeeded in securing the bid, but the parties' relationship went sour and plaintiff filed suit against defendants for treating it as a "minority front" - i.e., for using plaintiff's MBE status to increase the likelihood that it would win the bid for the contract, knowing that at no point would it permit plaintiff to perform work on the contract once the bid was secured. The Seventh Circuit held that plaintiff's claim was "an accusation of greed, not of racial discrimination." *Id.* at 881. The court held that it "would be a different case if the defendants would not have cheated similarly situated whites," but that "[t]here [wa]s no suggestion that the defendants want to make life difficult for blacks; they would have been happy to dupe a 'woman front' rather than a 'minority front.'" *Id.* Here, Plaintiffs specifically allege racial animus as the basis for their constitutional claims. This is not about greed: there is no allegation, or indication, that the City obtained a financial benefit from contracting with non-MBE/WBE Moore instead of MBE/WBE Safety Solutions. The sole basis underlying all of Safety Solutions's claims is race discrimination.

Because Plaintiffs' claim is unclear, the Court grants Defendants' motion to dismiss Count VI without prejudice.[11]

Similarly, the Court grants Safety Solutions leave to file an amended § 1983 claim under its newly-proffered equal protection theory. The City Defendants' argument that Plaintiffs' failure to allege "multiple instances" of unconstitutional conduct defeats the *Monell* claim may be appropriate at summary judgment, but is not relevant to a motion under Rule 12(b)(6).

### H.      The Complaint does not sufficiently plead a claim under § 1985 (Count IX)

Finally, in Count IX, Plaintiffs claim that the "City, Moore and Jarosz engaged in a conspiracy to deprive Plaintiffs of their property interest in their contract with the City without due process of law." (Compl. ¶ 106.) "The only conceivably applicable subsection is § 1985(3), which requires that a plaintiff allege, among other things, that the defendants intentionally conspired to deprive him of equal protection of the laws." *Wilson v. Price*, 624 F.3d 389, 394 n.2 (7th Cir. 2010). Despite Plaintiffs' arguments invoking equal protection, the Complaint makes no such allegation. The Court thus dismisses Count IX without prejudice.

### CONCLUSION

For the reasons discussed above, the Court grants in part with prejudice, grants in part without prejudice, and denies in part Defendants' motions to dismiss Plaintiffs' Complaint. Specifically, the Court grants the City Defendants' motion to dismiss Angelia Hopson as a Plaintiff under Rule 12(b)(1), grants Defendants' motion to dismiss Counts I, denies Defendants'

---

[11] If Plaintiffs base their § 1981 claim against the City on a breach of contract claim, *see* Compl. ¶¶ 84, 85a, 85b; *see, generally,* R. 35 (Pls.' Resp. to Defs.' Mot.), it fails because, as the Court has already determined, Plaintiffs' breach of contract claim fails as a matter of law.

motion to dismiss Counts II, III and IV, grants in part without prejudice and denies in part Defendants' motion to dismiss Count V, and grants without prejudice Defendants' motion to dismiss Counts VI, VII, VIII & IX. The Court grants Plaintiff Safety Solutions leave to file an amended complaint in accordance with this Order by no later than September 9, 2011.

**Date:** August 18, 2011

ENTERED

_____

**AMY J. STUEVE**
**United States District Court Judge**